THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | |
| CITGO PETROLEUM CORPORATION and CITGO REFINING AND CHEMICALS COMPANY, L.P., | § § § § | CRIMINAL NO. C-06-563 |
| Defendants. | § § § | |

**CITGO'S MOTION TO BAR THE GOVERNMENT FROM SEEKING A MONETARY PENALTY IN EXCESS OF THE STATUTORY MAXIMUM**

**INTRODUCTION**

CITGO is and wants to continue to be a positive and responsible member of the Corpus Christi community. It participates in numerous community service projects and uses its resources to help a variety of charitable organizations in Corpus Christi and Texas and throughout the country. In attempting to reach a compromise with the Government, CITGO has proposed that it would agree to the maximum fine and that it would not seek the return of that fine on appeal so long as the fine is used to fund charitable organizations or community service projects in the community. CITGO also has proposed that, as a condition of probation, it would agree to the appointment of an acceptable court-appointed compliance monitor, such as the commission run by Bob Jones and Jim Blackburn that already engages in oversight aimed at ensuring not only environmental compliance, but also the utilization of best management practices relative to benzene and hydrogen fluoride issues at the Corpus Christi refinery. CITGO adheres to the position, however, that the Court cannot order it to pay money to charitable

1

organizations or to fund community service projects if that funding, when added to the fine imposed, exceeds the maximum monetary penalty available under the statute.

The superseding indictment in this case did not allege any specific amount of gain or loss caused by CITGO's offense, and no such amount was argued or proved to the jury. In the wake of *Southern Union Co. v. United States*, 132 S. Ct. 2344 (2012), the Government concedes that the "total maximum statutory fine" the Court constitutionally may impose upon the CITGO entities therefore is limited to "$2,090,000." Notice of the Sentencing Recommendation of the United States and Proposed Factual Stipulations Regarding Material Events for Sentencing ("Sentencing Recommendation"), ECF No. 804, at 2. But, having lost on that issue, the Government's Sentencing Recommendation seeks an end-run around *Southern Union* by asking the Court to impose as part of the conditions of probation that CITGO pay over $44 million to State government and nonprofit groups throughout Texas and Louisiana. The proposed charitable "donations", all of which the Government wants CITGO to "fully fund," include:

- $23.8 million to the Coastal Bend Bays & Estuaries Program for the protection and enhancement of migratory bird habitat, including the purchase of two islands at $3 million apiece, Gov't Ex. SH-131;
- $14.9 million to the Corpus Christi Air Monitoring and Surveillance Camera Project, Gov't Ex. SH-134; and
- $2.9 million to the AutoCheck Vehicle Emissions Reduction Project, Gov't Ex. SH-130-a.

*See* Sentencing Recommendation at 4.

The Government thus seeks to impose a monetary penalty over *20 times higher* than the statutory maximum, and it imagines that CITGO will be forced to pay a penalty so far in excess of the maximum by describing these payments as "community service" and as "conditions" of a sentence of probation that can be enforced through the threat of this Court's contempt power.[1]

---

[1] For the reasons expressed in its Memorandum of Law Regarding the Court's Sentencing Powers, ECF No. 782, CITGO believes that the Court may not sentence CITGO to a term of probation if it also imposes the maximum fine,

2

The Government's attempt is contrary to applicable sentencing statutes, established precedent, and the Constitution.

### I.     Mandatory Payments to Charity Are Not a Permissible Condition of Probation

First, Congress does not permit courts to require a defendant to make monetary donations to charity as a probation condition *at all*, much less to make donations in excess of the maximum fine.  "[F]ederal courts have no inherent power or authority concerning probation, and their authority with regard thereto is only as conferred by statute." *United States v. Wright*, 744 F.2d 1127, 1129 (5th Cir. 1984).  In conformance with this principle, the Fifth Circuit has squarely held that a sentencing court may not condition probation on the payment of money to charity. *See United States v. Haile*, 795 F.2d 489, 491 (5th Cir. 1986).

According to the court in *Haile*, Congress has specified that "probation may be conditioned on a prescribed payment of money" in only three circumstances: a fine, restitution to aggrieved parties for actual damages or loss caused by the offense, and the support of legal dependents.  *Id.* at 491.  Reading the sentencing court's discretion to craft probation conditions to include other forms of payment would be an impermissible evasion of the limitations circumscribing fines, restitution, and dependent support.  *Id.*; *see also United States v. Turner*, 628 F.2d 461, 467 (5th Cir. 1980); *United States v. Jimenez*, 600 F.2d 1172, 1174-75 (5th Cir. 1979).  Every circuit court to consider the issue has concluded likewise.  *See, e.g.*, *United States v. John Scher Presents, Inc.*, 746 F.2d 959 (3d Cir. 1984); *United States v. Missouri Valley Constr. Co.*, 741 F.2d 1542 (8th Cir. 1984); *United States v. Wright Contracting Co.*, 728 F.2d

---

and that, in any event, it may not punish noncompliance with a condition of probation through contempt or through any means other than revoking probation and resentencing CITGO to the maximum fine.

3

648 (4th Cir. 1984); *United States v. Prescon Corp.*, 695 F.2d 1236 (10th Cir. 1982).[2] Thus, conditioning probation on the payment of money to charity is impermissible under *Haile*.[3]

## II.     Monetary Penalties In Excess of the Maximum Fine Amount Are Impermissible

Second, even if the Court could condition probation on the defendant's payment of charitable donations, any imposition of a sentence of probation that requires CITGO to pay the equivalent of a monetary penalty in excess of the maximum monetary penalty prescribed for its convictions by statute is plainly illegal. *See United States v. Mitsubishi Int'l Corp.*, 677 F.2d 785, 788 (9th Cir. 1982) (stating that although "the sentencing judge has broad discretion in setting probation conditions," this discretion is "limited by the requirement that . . . the statutorily prescribed maximum sentence cannot be increased by the terms of probation"); *United States v. Atl. Richfield Co.*, 465 F.2d 58, 61 (7th Cir. 1972) ("It is evident, however, that the conditions imposed by a court in connection with the suspension of sentence may not, at least if objected to by the defendant, exceed the maximum penalty authorized by Congress."). Indeed, even when the Supreme Court of Connecticut held that, under Connecticut law, a sentencing court may condition probation on the donation of money to charity, it was careful to warn that the donation amount cannot exceed the maximum fine. *State v. Pieger*, 692 A.2d 1273, 1280 (Conn. 1997) (holding that although a charitable donation could be a permissible condition under Connecticut law, "a trial court should not use [the probation power] as a pretext to impose a fine

---

[2] Numerous state courts interpreting state probation statutes have reached the same conclusion. *See, e.g.*, *In re Johnson*, 1 So.3d 425, 433-34 & n.10 (La. 2009) (describing established law); *State v. Dominguez*, 853 P.2d 147, 159 (N.M. Ct. App. 1993); *People v. Appel*, 529 N.Y.S.2d 311, 311-12 (N.Y. App. Div. 1988) (mem.); *Antosh v. State*, 510 So.2d 1158, 1159 (Fla. Dist. Ct. App. 1987); *State v. Theroff*, 657 P.2d 800, 802 (Wash. Ct. App. 1983).

[3] *Haile* was decided under the Probation Act, which was replaced by the Sentencing Reform Act in 1989. The section of the Probation Act upon which the court predicated its decision, however, has not been altered to give the district court power to order any other forms of payments. Section 3563 of Title 18 now provides that if a sentence of a fine has been imposed, payment of the fine is a mandatory condition of probation, and it also provides that the court may impose discretionary conditions of probation that the defendant "(1) support his dependents and meet other family responsibilities," and "(2) make restitution to a victim of the offense under section 3556." 18 U.S.C. § 3563(a); *id.* § 3563(b)(1)-(2). Those are the only types of payments listed as appropriate conditions under the Sentencing Reform Act. As under the Probation Act, the parties to whom a court can order restitution or dependent support and the amount of permissible restitution are circumscribed by Congress.

4

in excess of the statutory maximum, or to circumvent making the requisite findings for determining restitution").

One of the foundations of criminal law in a free society is that the government may not inflict arbitrary punishment on its citizens. It is for the legislature, not the courts, to determine the appropriate sanction for a crime. As such, "[c]ourts may not 'prescrib[e] greater punishment than the legislature intended.'" *Rutledge v. United States*, 517 U.S. 292, 297 (1996) (quoting *Missouri v. Hunter*, 459 U.S. 359, 366 (1983)) (alteration in original). The Fifth Circuit repeatedly has recognized that although a sentencing court retains great discretion to fashion an appropriate punishment, that discretion is limited to the statutory range fixed in advance by Congress. See, e.g., *United States v. Vera*, 542 F.3d 457, 459 (5th Cir. 2008) (stating that "a sentence which exceeds the statutory maximum is an illegal sentence" (quotation marks omitted)); *United States v. Coil*, 442 F.3d 912, 914 (5th Cir. 2006) (explaining that a sentence that exceeds the statutory maximum affects a defendant's "substantial rights and also affects the fairness, integrity, and public reputation of judicial proceedings" (citing *United States v. Olano*, 507 U.S. 725, 731–37 (1993))); *United States v. Collins*, 40 F.3d 95, 101 (5th Cir. 1994) ("Sentences may not exceed the maximum statutory limit."). In this case, the limit is $2,090,000, and the sentence cannot draw any larger penalty from CITGO, regardless of to whom the penalty is paid.

The Government attempts to cloak its demand for millions of dollars in fines as "community service." No doubt the Court can make performance of community service a condition of probation, *see* 18 U.S.C. § 3563(b)(12), even if its only means of ensuring compliance with its decree of forced labor is the threat of imposing the maximum fine upon revocation. But the Government does not want CITGO to perform community service; it wants

CITGO to make payments to charity. According to the Recommendation, the Court should order CITGO to "*fully fund* the seven community service projects/proposals received by the Court," but it makes no mention of any acts of service CITGO should perform. Sentencing Recommendation at 4 (emphasis added). The fact that the requested "donations" are supposed to be paid to State government entities (such as LDEQ and the University of Texas) and nonprofit organizations rather than to the United States is immaterial. In both instances, the Court would be ordering CITGO to pay money as a *penalty* for its crimes. As the Third Circuit recognized, "[t]he only difference between this condition and a fine is that here the payee on the corporate checks would be a charitable organization rather than the United States Treasury." *John Scher Presents, Inc.*, 746 F.2d at 963.[4] To the extent that it seeks the Court to order CITGO to pay a penalty in excess of the maximum, the Government's recommendation therefore is unlawful.

Moreover, the Supreme Court foreclosed the Government's recommendation in *Southern Union*. The district court in that case "set a maximum potential fine of $38.1 million, from which it imposed a fine of $6 million and *a community service obligatio[n] of $12 million*." 132 S. Ct. at 2349 (alteration in original) (emphasis added). The Court, however, held that the entirety of this fine, *including* the "community service obligation," violated the Sixth Amendment because the facts underlying the fine had not been determined to a reasonable doubt by the jury. *Id.* at 2351-52. *Southern Union* no more permits the Court to impose monetary

---

[4] The Court of Appeals of New Mexico reached a similar conclusion when considering a sentence giving the defendant the choice between paying a $5,000 fine or donating $500 to the Sheriff's Office:
> A "fine" is a sum of money that a court orders to be paid as punishment for a crime. *See Black's Law Dictionary* 524 (West 5th ed., abridged 1983). A "donation" is a voluntary payment. *See Webster's Third New International Dictionary* 672 (Philip Babcock Gove et al. eds., unabridged ed. 1976). We believe that both options offered to Ortega were essentially fines, albeit of differing amounts and with payment intended to go to different entities, because the court was ordering payment as punishment for a crime.

*Dominguez*, 853 P.2d at 159.

penalties payable to third parties in excess of the statutory maximum than it does those payable to the Treasury.

The requested payments also are not a permissible form of restitution because the nonprofit organizations are not victims of CITGO's offenses and the payments are not tied to any actual losses or damages caused the conduct underlying CITGO's convictions. *See United States v. Hughey*, 147 F.3d 423, 437-38 (5th Cir. 1998) (stating that "an award of restitution may not include losses that do not directly result from the offense made the basis of the conviction supporting the restitution order" and reversing an order of restitution "in excess of those amounts attributable to the conduct made the basis of Hughey's conviction"); *United States v. Upton*, 91 F.3d 677, 686 (5th Cir. 1996) (explaining that "[r]estitution for victims can only be awarded for the loss caused by the specific offense that is the basis of the offense of conviction"); *see also United States v. Austin*, 479 F.3d 363, 373 (5th Cir. 2007) ("When a defendant is ordered to pay restitution in an amount greater than the loss caused, the error affects substantial rights as well as the fairness and integrity of the judicial proceeding.").

The Government has not attempted to show, for example, that the Coastal Bend Bays & Estuaries Program was harmed by CITGO's failure to put roofs on Tanks 116 and 117 to the tune of $23 million, or that the money earmarked for the AutoCheck program is meant to replace losses incurred by that organization because of CITGO's conduct. Instead, the Government simply solicited budget proposals from selected groups and set the recommended charity penalty as the amount necessary to fully fund the programs listed in the proposals. In short, the Government cannot justify the monetary penalty it seeks to impose under the language of the statute, as a supplemental fine, or as a form of restitution.

### III. The Government's Recommendation Violates the Fair Notice Requirement of Due Process

Third, construing the law to permit the charitable donation sentence recommended by the Government would violate the Fifth Amendment's guarantee to due process by failing to provide notice that a conviction apparently subject to a penalty of $500,000 (or $15,000, in the case of the Migratory Bird Treaty Act convictions) actually can be subject to a back door penalty of $44 million or more depending on the discretion of the prosecution and the court seeking and imposing probation.[5] *See Rubino v. Lynaugh*, 845 F.2d 1266, 1271, 1273 (5th Cir. 1988) (stating that "the due process clause protects criminal defendants against action by the judiciary that would contravene the *ex post facto* clause if done by the legislature" and that these "principles guarantee defendants fair warning, not only of what is criminal, but also of what punishment attaches to a crime or crimes"); *cf. BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996) ("Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose.").

As the Supreme Court has observed, "vague sentencing provisions may pos[e] constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute." *United States v. Batchelder*, 442 U.S. 114, 123 (1979). Nothing in the sentencing provisions authorizing a district court to impose conditions of probation even remotely suggests that the court's power to order a defendant to "work in community service as directed by the court" or to "satisfy such other conditions as the court may impose," 18 U.S.C. § 3563(b), encompasses the power to order a defendant to give enormous sums of money to third

---

[5] "The Due Process Clause of the Fifth Amendment protects a defendant from retroactive application of unforeseeable judicial enlargement of criminal statutes." *United States v. Zuniga*, 18 F.3d 1254, 1258 (5th Cir. 1994).

8

parties as punishment for its crimes. No defendant could ever know the potential consequences of his actions under such a reading. If the Court can order CITGO to pay $44 million to charity under these provisions, why not $100 million? Why not $1 billion? In the end, reading the Court's statutory probation power to authorize monetary penalties in any amount in excess of the maximum fine prescribed by Congress is an unconstitutional imposition of an utterly arbitrary punishment.

The Government seeks to justify its recommended illegal sentence by pointing to CITGO's profits, arguing that the Court should disregard the statute and order a $44 million monetary penalty because, as a large corporation, the available fine in this case is not big enough to satisfy the Government's desire for punishment. But CITGO's resources do not change the penalty Congress chose to prescribe for violations of the Clean Air Act and the Migratory Bird Treaty Act, and CITGO's profits do not eviscerate the commands of due process. *Cf. BMW of N. Am., Inc.*, 517 U.S. at 585 ("The fact that BMW is a large corporation rather than an impecunious individual does not diminish its entitlement to fair notice of the demands that the several States impose on the conduct of its business."). *Southern Union* restricts the Court's ability to consider facts not proved to the jury—such as CITGO's alleged profits or gain from its operation of the Corpus Christi refinery—to increase the maximum fine amount.

The Government may be dissatisfied with the maximum fine it can obtain in this case, but that is the result of the Government's decision to not put the facts before the jury that were needed to obtain a larger fine under the Alternative Fines Act. cite. The Government's can't remediate its own trial decisions by asking the Court to condition CITGO's probation on the payment to charity of a monetary penalty that the Government wished it had obtained for itself. *See United States v. Brady*, 680 F. Supp. 245, 246-47 (W.D. Ky. 1988)) ("The punishment

appropriate for the diverse federal offenses is a matter for the discretion of Congress . . . . 'Whatever views may be entertained regarding severity of punishment, . . . these are peculiarly questions of legislative policy.'" (quoting *Gore v. United States*, 357 U.S. 386, 393 (1958)).

"[J]udges have no authority to add to the criminal penalties provided in federal statutes." *United States v. Fountain*, 768 F.2d 790, 799 (7th Cir. 1985) (Posner, J.). As such, the Court cannot order CITGO to make charitable donations in excess of the maximum fine, no matter how deserving those organizations might be. The Government's creative attempt to evade the limitations set out in *Southern Union* is illegal under the statutory scheme prescribed by Congress and under the Constitution.

## CONCLUSION

For the reasons set forth in this Motion, CITGO respectfully requests that the Court limit the monetary penalty imposed to no greater than the maximum fine permitted under the statute.

Respectfully submitted,

DeGUERIN & DICKSON

/s/ Dick DeGuerin_____
Dick DeGuerin
Texas Bar Card No. 05638000
Federal I.D. No. 6204
1018 Preston Ave., 7th Floor
Houston, Texas 77002
Telephone: 713-223-5959
Facsimile: 713-223-9231
LEAD COUNSEL

Catherine Baen
Texas Bar Card No. 01501500
1018 Preston, 8th Floor
Houston, Texas 77002
Telephone: 713-223-5959

        OF COUNSEL:
        Nathan P. Eimer
        Texas Bar Card No. 24001478
        Daniel D. Birk
        Eimer Stahl LLP
        224 South Michigan Avenue, Suite 1100
        Chicago, Illinois 60604
        Telephone: 312-660-7601

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of **CITGO'S MOTION TO BAR THE GOVERNMENT FROM SEEKING A MONETARY PENALTY IN EXCESS OF THE STATUTORY MAXIMUM** has been served on the following via the ECF system:

Howard P. Stewart, Senior Litigation Counsel
Environmental Crimes Section
U. S. Department of Justice
P. O. Box 23985
Washington, D.C. 20026-3985
Facsimile: 202-305-0397

James B. Nelson, Special Assistant U.S. Attorney
Environmental Crimes Section
U. S. Department of Justice
Washington, D.C.
Telephone: 202-305-0423
Facsimile: 202-305-0397

Paula Pierce
Texas Legal Services Center
815 Brazos, Suite 1100
Austin, Texas 78701
Telephone: 512-637-5414
Facsimile: 512-477-6576

Dated: September 17, 2012        /s/ Dick DeGuerin
                                                Dick DeGuerin